1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  THOMAS A. CROW,                )    Case No. CV 04-6127 (JTL)
                                   )
12                  Plaintiff,     )
                                   )
13            v.                   )    MEMORANDUM OPINION AND ORDER
                                   )
14  JO ANNE B. BARNHART,           )
    Commissioner of Social         )
15  Security,                      )
                                   )
16                  Defendant.     )
    _____    )

17

18       On July 27, 2004, Thomas A. Crow ("plaintiff") filed a Complaint

19  seeking review of the Commissioner's denial of plaintiff's application

20  for social security disability benefits.  On August 18, 2004, the

21  parties filed a Consent to Proceed Before United States Magistrate

22  Judge Jennifer T. Lum.  Thereafter, on January 26, 2005, defendant

23  filed an Answer to Complaint.  On April 1, 2005, the parties filed

24  their Joint Stipulation.

25       The matter is now ready for decision.

26  ///

27  ///

28  ///

**BACKGROUND**

On May 17, 2002, plaintiff filed an application for social security disability benefits.  (Administrative Record ["AR"] at 60-62).  In his application, plaintiff claimed that, beginning on June 1, 1999, his manic depression prevented him from working.  (AR at 72).  The Commissioner denied plaintiff's application for benefits both initially and upon reconsideration.  (AR at 27-30, 32-35).  On or about December 13, 2002, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR at 36).

On September 30, 2003, the ALJ conducted a hearing in Pasadena, California.  (AR at 306-65).  Plaintiff appeared at the hearing with counsel and testified.  (AR at 308-37).  Betty L. Borden, Ph.D., a clinical psychologist, and Laurence Gordon, a vocational expert, also testified.  (AR at 338-65).

On February 3, 2004, the ALJ issued his decision denying benefits.  (AR at 17-24).  In his decision, the ALJ concluded that plaintiff suffered from bi-polar and anxiety disorders, which are severe in combination. (AR at 23).  According to the ALJ, however, these impairments did not meet or equal any of the criteria contained in the Commissioner's Listing of Impairments, 20 C.F.R. Section 404, Subpart P, Appendix 1.  (AR at 22).  The ALJ also found that, based upon plaintiff's residual functional capacity, plaintiff retained the capacity to perform a full range of work involving simple, repetitive tasks.  (Id.).  Ultimately, the ALJ found that plaintiff was not disabled pursuant to the Social Security Act.  (AR at 21, 25).

On April 7, 2004, plaintiff filed a timely request with the Appeals Council for review of the ALJ's decision.  (AR at 12-13).  Upon review of plaintiff's request, the Appeals Council affirmed the

1 | ALJ's decision.  (AR at 7-10).

2

3 | **PLAINTIFF'S CONTENTIONS**

4 | Plaintiff makes the following claims in the parties' Joint

5 | Stipulation:

6 | 1.   The ALJ failed to summarize the written testimony of

7 | plaintiff's lay witness and to assess the witness's credibility.

8 | 2.   The ALJ improperly rejected plaintiff's credibility.

9 | 3.   The ALJ failed to apply the "excess pain and other

10 | symptoms rules."

11 | 4.   The ALJ improperly relied on a non-examining medical

12 | advisor's opinion over the opinion of plaintiff's treating physicians.

13 | 5.   The ALJ failed to provide plaintiff with a full and

14 | fair hearing.

15 | 6.   The ALJ failed to receive into evidence a medical

16 | report covering the period April 6, 2004 to December 6, 2004, and such

17 | report should be considered on remand.

18

19 | **STANDARD OF REVIEW**

20 | The Court reviews the ALJ's decision under 42 U.S.C. § 405(g) to

21 | determine whether the ALJ's findings are supported by substantial

22 | evidence and whether the proper legal standards were applied.  DeLorme

23 | v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence

24 | means "more than a mere scintilla" but less than a preponderance.

25 | Richardson v. Perales, 402 U.S. 389, 401 (1971); Desrosiers v.

26 | Secretary of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.

27 | 1988).

28 | ///

1   Substantial evidence is "such relevant evidence as a reasonable

2   mind might accept as adequate to support a conclusion."  <u>Richardson</u>,

3   402 U.S. at 401.  This Court must review the record as a whole and

4   consider adverse as well as supporting evidence.  <u>Green v. Heckler</u>,

5   803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible

6   of more than one rational interpretation, the ALJ's decision must be

7   upheld.  <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1452 (9th Cir. 1984).

8

9                              **DISCUSSION**

10  **A.    The ALJ's Rejection of the Opinions of Plaintiff's Treating**

11  **      Psychiatrists**

12      Plaintiff contends that the ALJ failed to give proper weight to

13  the opinions of plaintiff's treating physicians and, instead, relied

14  on the opinion of non-examining clinical psychologist.  Plaintiff

15  contends that the ALJ's reliance on the opinion of a non-examining

16  physician instead of the opinions of plaintiff's two treating

17  physicians constitutes error.

18      Plaintiff's treating psychiatrist, William E. Vollero, M.D.,

19  performed a Complete Medical Report (Mental) on plaintiff, which

20  contained an assessment of plaintiff's ability to do work-related

21  activities.  (AR at 295-98).  In the report, dated October 1, 2003,

22  Dr. Vollero opined that plaintiff's prognosis was "guarded for major

23  improvement given chronicity of his present syndrome."  (AR at 295).

24  Dr. Vollero further opined that plaintiff exhibited generally poor

25  abilities in making occupational adjustments, performance adjustments,

26  and personal/social adjustments.  (AR at 296-97).

27  ///

28  ///

4

1      On July 30, 2002, Mihai Chituc, M.D., plaintiff's treating

2  psychiatrist, completed a Mental Disorder Questionnaire Form on behalf

3  of plaintiff.  (AR at 229-33).  Dr. Chituc diagnosed plaintiff with

4  biploar Type II mood disorder, anxiety disorder, and social phobia,

5  with a guarded prognosis.  (AR at 232).  Dr. Chituc further opined

6  that plaintiff "is not able to do any kind of work due to his poor

7  concentration, memory, low energy level and motivation and his

8  fearfulness."  (Id.).  Dr. Chituc treated plaintiff from December 23,

9  1999 to July 10, 2002.  (Id.).

10      Finally, Dr. Borden, a non-examining clinical psychologist,

11  completed a Psychiatric Review Technique and diagnosed plaintiff with

12  bipolar and anxiety disorders. (AR at 261-73).  While she found no

13  functional limitation on plaintiff's daily living activities or

14  episodes of decompensation  (AR at 271), she placed mild limitations

15  on his ability to maintain social functioning and moderate to marked

16  limitations in his ability to maintain concentration, persistence, or

17  pace.  (Id.).  On September 30, 2003, Dr. Borden completed a Mental

18  Residual Functional Capacity Assessment on plaintiff and found no

19  significant limitations or only moderate limitations in the areas of

20  understanding and memory, sustained concentration and persistence,

21  social interaction, and adaption.  (AR at 275-77).  At the hearing,

22  Dr. Borden testified that plaintiff's impairments did not meet or

23  equal a listed impairment and that he was capable of performing simple

24  repetitive work.  (AR 342-43).

25      The ALJ relied on Dr. Borden's assessment and determined that

26  plaintiff retained the residual functional capacity to return to his

27  past relevant work as a bank messenger, or alternatively, another

28  medium and unskilled job.  (AR at 23).  In doing so, the ALJ rejected

5

1 | the opinions of two treating psychiatrists who opined that plaintiff
2 | was disabled.

3 |     The ALJ rejected Dr. Chituc's opinion that plaintiff was disabled
4 | based on three factors.   First, the ALJ found that Dr. Chituc's
5 | opinion was inconsistent with his own clinical findings.  (AR at 21).
6 | Second, the ALJ determined that Dr. Chituc's medical opinions were
7 | unsubstantiated   conclusions   that   merely   gave   a   recitation   of
8 | plaintiff's subjective complaints.  (Id.).   Finally, the ALJ found
9 | that Dr. Chituc improperly acted as an advocate for plaintiff. (Id.).
10 |     An ALJ should afford less weight to a non-examining physician's
11 | opinion than to either a treating physician's opinion.  See Pitzer v.
12 | Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990)("[T]he conclusion of
13 | a  non-examining  physician  is  entitled  to  less  weight  than  the
14 | conclusion  of  an  examining  physician.").    Standing  alone,  a  non-
15 | examining physician's opinion cannot constitute substantial evidence
16 | to reject a treating physician's opinion.  See Lester v. Chater, 81
17 | F.3d  821,  831  (9th  Cir.  1996)  ("The  opinion  of  a  nonexamining
18 | physician  cannot  by  itself  constitute  substantial  evidence  that
19 | justifies  the  rejection  of  the  opinion  of  either  an  examining
20 | physician or a treating physician.") (emphasis in original).  In order
21 | to reject the testimony of a treating physician in favor of a non-
22 | examining physician, the ALJ must give specific, legitimate reasons
23 | that  are  supported  by  substantial  evidence  in  the  record.    Id.
24 | (quoting  Roberts v. Shalala,  66  F.3d  179,  184  (9th  Cir.  1995)).
25 | Furthermore, "where the opinion of the claimant's treating physician
26 | is contradicted, and the opinion of a nontreating source is based on
27 | independent clinical findings that differ from those of the treating
28 | physician, the opinion may itself be substantial evidence; it is then

1  solely the province of the ALJ to resolve the conflict." Andrews, 53

2  F.3d at 1041.

3       Here, the ALJ rejected the opinions of two treating psychiatrists

4  in favor of a non-examining clinical psychologist.   As discussed

5  below, the ALJ's bases for rejecting Dr. Chituc's opinion lack merit.

6       **1.    Internal Inconsistency**

7       The ALJ initially rejects Dr. Chituc's opinion that plaintiff was

8  completely disabled due to an alleged inconsistency with his own

9  clinical findings.   (AR at 21).   In a Mental Disorder Questionnaire

10  Form completed on July 30, 2002, Dr. Chituc opined, "This patient is

11  fatally and permanently disabled."   (AR at 233).   The ALJ found that

12  Dr. Chituc's opinion conflicted with findings that plaintiff had

13  received "consistent and relatively high" Global Assessment of

14  Functioning[1] ("GAF") scores ranging from 55 to 65.   (AR at 21, 200,

15  205).   The ALJ determined that the inconsistency between the GAF

16  scores and the disability recommendation warranted a rejection of Dr.

17  Chituc's opinion.   (AR at 21).

18       The Ninth Circuit permits an ALJ to reject a treating physician's

19  opinion where the treating physician makes inconsistent disability

20  determinations for the same claimant. Rollins v. Massanari, 261 F.3d

21  853, 856 (9th Cir. 2001) (ALJ properly rejected treating physician's

22  opinion where physician first found plaintiff not disabled but, three

23  months later, found plaintiff was disabled); Johnson, 60 F.3d at 1433

24  (ALJ properly rejected treating physician's opinion where "[the

25  physician's] retrospective conclusion that claimant was totally

26  —————————————

27     [1]  "A GAF score is a rough estimate of an individual's
   psychological, social, and occupational functioning used to

28  reflect the individual's need for treatment." Vargas v. Lambert,
   159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

disabled by October 23, 1986 contradict[ed] his own contemporaneous

finding in 1986 that claimant was only 'temporarily disabled' and

needed only 'a program of conservative care'") (citations omitted).

The ALJ contends that GAF scores within the range of 55 and 65

constitute a "relatively high" score not warranting a disability

ruling.   (AR at 21).   A GAF score between 51 to 60 indicates

"[m]oderate symptoms (e.g., flat affect and circumstantial speech,

occasional panic attacks) or moderate difficulty in social,

occupational, or school functioning (e.g., few friends, conflicts with

peers or co-workers)."   Diagnostic and Statistical Manual of Mental

Disorders 34 (4th. ed, rev. 2000).   Plaintiff received the following

GAF scores from Dr. Chituc:

| Date | GAF score |
| --- | --- |
| December 23, 1999 | 60 (AR at 205) |
| March 21, 2000 | 60 (AR at 200) |
| May 10, 2000 | 65 (AR at 198) |
| August 7, 2000 | 65 (AR at 195) |
| October 16, 2000 | 60 (AR at 193) |
| January 2, 2001 | 55 (AR at 191) |
| February 15, 2001 | 60 (AR at 189) |
| May 22, 2001 | 55 (AR at 183) |
| July 3, 2001 | 60 (AR at 181) |
| November 5, 2001 | 60 (AR at 175) |
| December 17, 2001 | 60 (AR at 173) |
| April 19, 2002 | 60 (AR at 171) |
| May 29, 2002 | 60 (AR at 167) |
| July 10, 2002 | 55 (AR at 164). |

1 Overall, plaintiff received a median GAF score of 60 and a mean GAF

2 score of 59.6.  Notably, plaintiff scored a 55 on his most recent GAF

3 assessment.  (AR at 164).

4      According to the definition above, the Court finds that a GAF

5 score of 60 is not properly characterized as a "relatively high" score

6 that does not warrant a finding of disability.[2]  (AR at 21).   The

7 courts have found that one can be totally disabled even with only

8 moderate difficulty in occupational and social functioning.  See,

9 e.g., Schenider v. Commissioner, 223 F.3d 968, 974 (9th Cir. 2000)

10 (finding a claimant with a GAF score of 60 to be disabled).  Thus, Dr.

11 Chituc's finding that plaintiff in this case was disabled is not

12 inconsistent with a GAF score of 60.  Accordingly, the ALJ's rejection

13 of Dr. Chituc's opinion for this reason was improper. Roberts, 66 F.3d

14 at 184.

15      **2.   Medical Reports Based on Subjective Complaints and Not on**

16           **Objective Findings**

17      The ALJ also rejected Dr. Chituc's opinion regarding plaintiff's

18 disabled status because he contends that Dr. Chituc's opinion lacked

19 factual foundation and was conclusory.  (AR at 21).  Specifically, the

20 ALJ describes Dr. Chituc's assessment of plaintiff's mental health as

21 "little more than a recitation of the claimant's alleged subjective

22 mental symptoms."  (Id.).  As discussed below, the Court disagrees.

23 _____

24      [2]  On the other hand, a GAF score of 61-70 indicates "[s]ome
mild symptoms (e.g., depressed mood and mild insomnia) or some
25 difficulty in social, occupational, or school functioning (e.g.,
occasional truancy, or theft within the household), but generally
26 functioning pretty well, has some meaningful interpersonal
relationships." Diagnostic and Statistical Manual of Mental
27 Disorders 34 (4th. ed, rev. 2000).  Here, there were only two
occasions, in May and August 2000, in which Dr. Chituc assessed a
28 GAF score of 65 for plaintiff.

1     The Ninth Circuit permits an ALJ to rely on an absence of

2 objective findings to reject a treating physician's opinion. <u>Johnson</u>

3 <u>v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995) (inadequate clinical

4 findings provide specific and legitimate basis for ALJ to reject

5 treating physician's opinion); <u>Buckhart v. Bowen</u>, 856 F.2d 1335, 1339

6 (9th Cir. 1988) (proper to disregard uncontroverted treating

7 physician's opinion when he fails to provide objective descriptions of

8 medical findings); <u>cf.</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 421 (9th Cir.

9 1988) (improper to reject treating physician's opinion where he

10 provided at least some objective observations and laboratory and x-ray

11 testing in addition to subjective opinions).

12     Nevertheless, an ALJ may not reject a treating physician's

13 opinion for lacking supporting clinical data or explanation without

14 first re-contacting the physician to determine whether such supporting

15 clinical data exists.  In particular, 20 C.F.R. 404.1512(e)(1), in

16 pertinent part, states:

17           We will first recontact your treating physician or

18           psychologist or other medical source to determine

19           whether the additional information we need is

20           readily available. We will seek additional

21           evidence or clarification from your medical source

22           when the report from your medical source contains

23           a conflict or ambiguity that must be resolved, <u>the</u>

24           <u>report does not contain all the necessary</u>

25           <u>information, or does not appear to be based on</u>

26           <u>medically acceptable clinical and laboratory</u>

27           <u>diagnostic techniques</u>.

28 20 C.F.R. 404.1512(e)(1) (emphasis added).  Thus, unless an ALJ

1   complies with his duty to re-contact the treating physician, an ALJ

2   cannot validly cite a lack of clinical data or explanation to reject

3   the treating physician's opinion.  See Cleveland v. Apfel, 99 F. Supp.

4   2d 374, 380 (S.D.N.Y. 2000) (remanding case to ALJ for failure to re-

5   contact treating physician before rejecting opinion and stating, "When

6   the  opinion  submitted  by  a  treating  physician  is  not  adequately

7   supported by clinical findings, the ALJ must attempt, sua sponte, to

8   develop the record further by contacting the treating physician to

9   determine whether the required information is available"); see also

10  Corey v. Barnhart, 2002 WL 663130, at *5 (S.D. Ind. March 14, 2002)

11  ("The  ALJ  discredited  Dr.  Ciulla's  opinion  because  of  the  lack  of

12  objective findings, and there is no indication in the record that the

13  ALJ recontacted Dr. Ciulla to find out whether he had any findings or

14  other information to support his opinion.  The ALJ's failure to do so

15  was error.").

16      Here,  the  ALJ  erred  in  citing  a  lack  of  objective  findings  to

17  reject Dr. Chituc's opinions for two reasons.  First, the ALJ rejected

18  Dr.  Chituc's  opinion  without  first  re-contacting  him  to  determine

19  whether,  in  fact,  clinical  data  existed  to  support  his  opinion.

20  Moreover, the record indicates that such supporting medical evidence

21  existed.   As  noted  above,  Dr.  Chituc's  treatment  notes  contain  14

22  different GAF assessments from 1999 to 2002.   (AR at 164, 167, 171,

23  173, 175, 181, 183, 189, 191, 193, 195, 198, 200, 205).   As such, the

24  ALJ prematurely rejected Dr. Chituc's opinion.   On remand, the ALJ

25  must re-contact Dr. Chituc to determine whether medically acceptable

26  clinical or laboratory diagnostic data supports his opinion.

27      Second,  notwithstanding  the  ALJ's  failure  to  re-contact  Dr.

28  Chituc, there appears to be objective medical evidence in the record

1 to corroborate Dr. Chituc's disability finding.  First, Dr. Chituc

2 conducted regular GAF assessments on plaintiff over two and a half

3 years.  (Id.).  Furthermore, during each visit with plaintiff, Dr.

4 Chituc took notes (AR at 163, 166, 170, 172, 174, 176, 182, 188, 190,

5 192, 194, 197, 199, 204); made specific observations regarding

6 plaintiff's grooming, eye contact, posture, behavior, motor activity,

7 manner, mood affect, speech, thought process, insight, judgment,

8 reliability, and impulse (AR at 163, 166, 170, 172, 174, 176, 182,

9 188, 190, 192, 194, 197, 199, 205); and consistently made the same

10 diagnoses (AR at 164, 167, 171, 173, 175, 177, 181, 183, 189, 191,

11 193, 195, 198, 200).  Dr. Chituc's treatment notes clearly indicate

12 that he examined plaintiff at each visit.  There is nothing to suggest

13 that Dr. Chituc's disability assessment was not based on his clinical

14 observations.

15        Accordingly, substantial evidence does not support the ALJ's

16 decision to reject Dr. Chituc's conclusions for lack of supporting

17 evidence.

18        **3.    Advocacy on Plaintiff's Behalf**

19        Finally, the ALJ rejected Dr. Chituc's opinion based on his

20 contention that Dr. Chituc lacked objectivity in his assessment of

21 plaintiff's mental status.  (AR at 21).  The ALJ opined that Dr.

22 Chituc's disability recommendation represented an "advocate's attempt

23 to gain disability benefits for his patient," noting that Dr. Chituc

24 advised plaintiff to appeal the denial of his disability benefits.

25 (Id.).

26        The ALJ may not assume that treating physicians in general are

27 biased towards claimants.  Lester, 81 F.3d at 832 ("The Secretary may

28 not assume that doctors routinely lie in order to help their patients

12

1   collect disability benefits") (quotation omitted).  Although an ALJ

2   may consider the source of a medical opinion, he cannot rely solely

3   upon the source of the opinion to reject the opinion.  <u>Reddick v.</u>

4   <u>Chater</u>, 157 F.3d 715, 726 (9th Cir. 1998) ("Evidence of the

5   circumstances under which the report was obtained and its consistency

6   with other records, reports, or findings could, however, form a

7   legitimate basis for evaluating the reliability of the report.").  A

8   treating physician's opinion, however, may still be rejected if there

9   is a showing of clear bias.  <u>Saelee v. Chater</u>, 94 F.3d 520, 522-23

10  (9th Cir. 1996) (rejecting treating physician's opinion that was

11  created at request of claimant because doctor's opinion letter varied

12  from his treatment notes and "was worded ambiguously in an apparent

13  attempt to assist [the claimant] in obtaining social security

14  benefits").

15      Here, the ALJ erred in citing Dr. Chituc's bias in rendering his

16  opinion as a basis for rejecting that opinion.  Unlike <u>Saelee</u>, nothing

17  in the record suggests that Dr. Chituc ambiguously worded his opinion

18  to assist plaintiff.  The only instance of bias cited by the ALJ

19  consists of Dr. Chituc's treatment notes stating, "[Patient] upset

20  about denial of SSI.  Advised [patient] to request an appeal." (AR at

21  165).  Advising a patient that he may appeal a decision does not rise

22  to the level of "an advocate's attempt to gain disability benefits for

23  his patient."  (AR at 21.).  Dr. Chituc merely informed plaintiff of

24  the procedural avenue of an appeal.  He did not offer any assistance

25  to plaintiff with the appeal, provide any advice on how to proceed

26  with the appeals process, or offer to advocate on plaintiff's behalf.

27  Accordingly, Dr. Chituc's alleged lack of objectivity does not

28  constitute a legitimate basis to reject his medical assessment that

13

1 plaintiff is disabled.

2

3 **B.    Reversal and Remand is Appropriate**

4       The choice whether to reverse and remand for further

5 administrative proceedings, or to reverse and simply award benefits,

6 is within the discretion of the Court.   McAlister v. Sullivan, 888

7 F.2d 599, 603 (9th Cir. 1989).   Remand is appropriate where additional

8 proceedings would remedy defects in the ALJ's decision, and where the

9 record should be developed more fully.   Id; see also Rodriquez v.

10 Bowen, 876 F.2d 759, 763 (9th Cir. 1989); Marcia v. Sullivan, 900 F.2d

11 172, 176 (9th Cir. 1990).   An award of benefits is appropriate where

12 no useful purpose would be served by further administrative

13 proceedings, see Gamble v. Chater, 68 F.3d 319, 322-23 (9th Cir.

14 1995), where the record has been fully developed, see Schneider v.

15 Commissioner of the Social Security Administration, 223 F.3d 968, 976

16 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1455 (9th Cir.

17 1993), or where remand would unnecessarily delay the receipt of

18 benefits.   See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).

19       Here, remand for further proceedings is appropriate to allow the

20 ALJ to give specific, legitimate reasons that are supported by

21 substantial evidence in the record for rejecting the testimony of a

22 treating physician in favor of a non-examining physician.[3]

23 _____

24      [3]   In the Joint Stipulation, plaintiff also argues that the
ALJ erred in (1) failing to summarize the written testimony of
25 plaintiff's lay witness's and to assess the witness's
credibility, (2)improperly rejecting plaintiff's credibility, (3)
26 failing to apply the "excess pain and other symptoms rules," (4)
failing to provide plaintiff with a full and fair hearing, and
27 (5) failing to receive into evidence a medical report covering
the period April 6, 2004 to December 6, 2004.   As explained
28 above, however, the ALJ's failure to give specific, legitimate

(continued...)

1

**ORDER**

2      The Court, therefore, VACATES the decision of the Commissioner of

3  Social  Security  Administration  and  REMANDS  the  case  for  further

4  administrative proceedings consistent with the Memorandum Opinion and

5  Order.

6      **LET JUDGMENT BE ENTERED ACCORDINGLY.**

7

DATED: August 17, 2005

8                                              _____/s/_____
                                               JENNIFER T. LUM
9                                              UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23  _____

24      [3](...continued)
    reasons that are supported by substantial evidence in the record
25  for rejecting the testimony of a treating physician in favor of a
    non-examining physician constitute sufficient reason to remand
26  this case.  Moreover, depending on the outcome of the proceedings
    on remand, the ALJ will have an opportunity to address
27  plaintiff's other arguments.  In any event, the ALJ should
    consider all the issues raised by plaintiff in the Joint
28  Stipulation when determining the merits of plaintiff's case on
    remand.